UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE FLUOR CORPORATION | § | |
| STOCKHOLDER DERIVATIVE | § | |
| LITIGATION | § | |
| | § | |
| | § | Lead Case No. 3:20-CV-01442-X |
| | § | |
| This Document Relates To: | § | |
| | § | (Consolidated with Case Nos. 3:20- |
| ALL ACTIONS. | § | CV-01558-X and 3:21-CV-00353-X) |

**OPPOSITION TO PLAINTIFF JOAN GOODMAN'S MOTION TO APPOINT LEAD
PLAINTIFF AND APPROVE PLAINTIFF'S SELECTION OF LEAD COUNSEL**

## TABLE OF CONTENTS

I.   SUMMARY OF ARGUMENT ........................................................................1

II.  ROBBINS, NOT SCOTT+SCOTT, SHOULD BE APPOINTED LEAD
     COUNSEL ...................................................................................................5

     A.   The Quality of Plaintiffs' Respective Pleadings Does Not Support
          Appointing Goodman and Her Counsel to Leadership Positions Here .................5

          1.   The Inclusion of 220 Materials in the *Goodman* Complaint Does
               Not Mean Goodman and Her Counsel Should Lead This Case..................5

          2.   Goodman Fails to Adequately Plead her Federal Claims and, Thus,
               Fails to Allege a Basis for Federal Jurisdiction ........................................10

     B.   Plaintiffs Lee and Bottoni and their Counsel Have Shown They Will More
          Vigorously Pursue This Action...............................................................13

     C.   Scott+Scott Has Not Demonstrated that It Is More Qualified than Robbins
          to Serve as Lead Counsel .....................................................................15

III. THE BALON B. BRADLEY LAW FIRM SHOULD BE APPOINTED LIAISON
     COUNSEL ...................................................................................................16

IV.  IN THE EVENT A LEAD PLAINTIFF IS APPOINTED, PLAINTIFF LEE—
     NOT GOODMAN—SHOULD BE APPOINTED TO SERVE IN THAT ROLE............16

V.   CONCLUSION..............................................................................................18

## TABLE OF AUTHORITIES

**CASES**                                                  **PAGE(S)**

*Berg v. Guthart*,
   2014 WL 3749780 (N.D. Cal. July 30, 2014)......................................................2, 6, 8, 14

*Biondi v. Scrushy*,
   820 A.2d 1148 (Del. Ch. 2003)...............................................................................3

*Biotechnology Value Fund, L.P. v. Celera Corp.*,
   12 F. Supp. 3d 1194 (N.D. Cal. 2013) ...............................................................12

*Briley v. Barreca*,
   2021 WL 269767 (E.D. La. Jan. 27, 2021)........................................................13

*Chester Cnty. Emps.' Ret. Fund v. White*,
   2012 WL 1245724 (N.D. Ill. Apr. 13, 2012) ...........................................2, 8, 17

*Chun v. Fluor Corp. et al.*,
   Case No. 3:18-CV-01338-X (N.D. Tex.)...............................................................4

*Cook v. Hewlett-Packard Co.*,
   No. 8667-VCG, 2014 Del. Ch. LEXIS 11 (Del. Ch. Jan. 30, 2014)....................7

*Gallardo v. Bennett*,
   2006 WL 2884497 (N.D. Cal. Oct. 10, 2006)....................................................17

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
   258 F.R.D. 260 (S.D.N.Y. June 30, 2009)...................................................10, 15

*In re Comverse Tech., Inc., Derivative Litig.*,
   2006 WL 3761986 (E.D.N.Y. Sept. 22, 2006) ...................................................17

*In re Connetics Corp. Sec. Litig.*,
   542 F. Supp. 2d 996 (N.D. Cal. 2008) ...............................................................12

*In re Fossil, Inc.*,
   713 F. Supp. 2d 644 (N.D. Tex. 2010) .........................................................11, 12

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   2017 WL 130282 (N.D. Cal. Jan. 12, 2017)......................................................10

*Iron Workers Mid–South Pension Fund on Behalf of Caterpillar Inc. v. Oberhelman*,
   2014 WL 5801508 (C.D. Ill. Nov. 7, 2014)........................................................5

*Johns v. Bayer Corp.*,
   2010 WL 2573493 (S.D. Cal. June 24, 2010)....................................................12

*Kubiak v. Barbas*,
2011 U.S. Dist. LEXIS 65903 (S.D. Ohio June 14, 2011) .................................................14

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ............................................................................................11

*MacAlister v. Guterma*,
263 F.2d 65 (2d Cir. 1958)................................................................................................17

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
2011 WL 4389689 (C.D. Cal. May 5, 2011) .....................................................................12

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)............................................................................................................10

*Moradi v. Adelson*,
2011 WL 5025155 (D. Nev. Oct. 20, 2011) ......................................................................17

*Pfeiffer v. Leedle*,
2013 WL 5988416 (Del. Ch. Nov. 8, 2013) ........................................................................7

*Pfeiffer v. Toll*,
989 A.2d 683 (Del. Ch. 2010)..............................................................................................7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Stumpf*,
2012 WL 424557 (N.D. Cal. Feb. 9, 2012) .........................................................................7

*Pyott v. La. Mun. Police Emps.' Ret. Sys.*, 74 A.3d 612 (Del. 2013)...............................................6

*Ryan v. Gifford*,
918 A.2d 341 (Del. Ch. 2007).............................................................................................7

*Shaev v. Baker*,
2017 WL 1735573 (N.D. Cal. May 4, 2017) .......................................................................7

## STATUTES, RULES & OTHER AUTHORITIES

28 U.S.C §1367(c)(3).....................................................................................................................12

## I.    SUMMARY OF ARGUMENT

On May 10, 2021, Jay Lee ("Lee") and Alyson Bottoni ("Bottoni")—the first stockholder plaintiffs to commence derivative claims on behalf of Fluor Corporation ("Fluor" or the "Company")—filed a motion to appoint their counsel, Robbins LLP ("Robbins") and the Balon B. Bradley Law Firm ("Bradley"), as Lead Counsel and Liaison Counsel, respectively, in the above-captioned consolidated stockholder derivative action (the "Derivative Action").[1]   The other plaintiff in the consolidated Derivative Action, Joan Goodman ("Goodman"), filed a competing motion that same day, seeking to be appointed "lead plaintiff" and to have her counsel, Scott+Scott Attorneys at Law LLP ("Scott+Scott"), appointed "lead counsel."   Plaintiffs Lee and Bottoni respectfully submit that plaintiff Goodman's competing leadership motion should be denied.

Following the commencement of the *Lee* and *Bottoni* Actions in June 2020, plaintiff Goodman elected to make a demand on Fluor to inspect certain of the Company's books and records pursuant to Section 220 of the Delaware General Corporation Law ("Section 220"). Approximately eight months later, and well after the *Lee* and *Bottoni* complaints were filed, plaintiff Goodman filed her derivative complaint (the "*Goodman* Complaint").

Now, in support of her leadership motion, plaintiff Goodman relies almost exclusively on the fact that she obtained a limited set of meeting minutes of Fluor's Board of Directors ("Board") / corporate books and records pursuant to Section 220 before filing her complaint, contending that those documents make her complaint "significantly stronger" than the Lee and Bottoni complaints. But simply obtaining Section 220 materials does not necessarily mean the pleadings are stronger

---

[1] The consolidated Derivative Action includes the following three cases:  (i) *Bottoni v. Hernandez, et al.*, Case No. 3:20-cv-01442-X (N.D. Tex. June 5, 2020) (the "*Bottoni* Action"); (ii) *Lee v. Hernandez, et al.*, Case No. 3:20-cv-01558-X (N.D. Tex. June 12, 2020) (the "*Lee* Action"); and (iii) *Goodman v. Boeckmann, et al.*, Case No. 3:21-cv-00353-X (N.D. Tex. Feb. 19, 2021) (the "*Goodman* Action").

or that one plaintiff or firm should be appointed to a leadership position over another plaintiff or firm.  Indeed, Robbins, counsel for plaintiffs Lee and Bottoni, has adequately pleaded demand futility in many stockholder derivative actions without the benefit of books and records obtained through inspection demands.  *See* section II.A.1., *infra*.  And, as Scott+Scott, counsel for plaintiff Goodman, knows first-hand, stockholder plaintiffs often fail to adequately plead demand futility despite having the benefit of Section 220 materials.  It is for that reason that a determination as to the necessity and ultimate value of Section 220 materials in connection with establishing demand futility should not be made in the context of a leadership motion.  As one court put it, such an analysis "would require the Court to put the cart before the horse, by determining whether any movant meets the substantive pleading standards of Rule 23.1 prior to appointing a lead plaintiff." *Chester Cnty. Emps.' Ret. Fund v. White*, 2012 WL 1245724, at *1 n.2 (N.D. Ill. Apr. 13, 2012).  Such analysis in the context of the instant leadership motions is particularly inappropriate given that the references to the Section 220 materials in the *Goodman* Complaint are redacted, which makes it difficult (if not impossible) for plaintiffs Lee and Bottoni to assess the relative strength of the *Goodman* Complaint.[2]  Moreover, the Section 220 materials here are not solely in the possession of plaintiff Goodman and her counsel—the same or substantially similar books and records have already been produced and/or promised to other stockholder plaintiffs in related derivative actions pending elsewhere.  Counsel for plaintiffs Lee and Bottoni will likewise have access to these books and records if they are appointed to leadership positions, and a consolidated complaint that includes all of the allegations (including anything helpful from the Section 220 materials) will eventually be filed in this case in any event.

---

[2] *See Berg v. Guthart*, 2014 WL 3749780, at *6 (N.D. Cal. July 30, 2014) (holding that quality of pleadings factor was neutral where the parties were unable to assess complaint due to the complaint being "heavily redacted").

Even the public, redacted version of the *Goodman* Complaint demonstrates that it is not of a higher quality than the Lee and Bottoni complaints. Critically, the *Goodman* Complaint does not allege the requisite elements for pleading a derivative Section 10(b) claim—i.e., that Fluor suffered losses stemming from the defendants' misstatements in connection with the Company's purchase or sale of securities. The Lee and Bottoni complaints, in contrast, allege particularized facts showing that Flour's fiduciaries made false and misleading statements that artificially inflated the price of Fluor stock and caused the Company to repurchase its own shares at those artificially inflated prices (in addition to particularized allegations showing that the defendants breached their fiduciary duties). Without an adequately-pled federal claim,[3] there is no federal jurisdiction over Goodman's claims (she does not allege federal jurisdiction based on diversity of citizenship).

Plaintiff Goodman also contends that she and her counsel "ha[ve] prosecuted this action in the most effective and vigorous way." *Goodman* Motion at 2.[4] But it is counsel for plaintiffs Lee and Bottoni who have worked most effectively and efficiently to date to coordinate and organize the related derivative actions. In addition to filing the first two derivative complaints,[5] Robbins'

---

[3] Plaintiff Goodman's Section 29(b) claim also fails because it is dependent upon violations of Section 10(b).

[4] "*Goodman* Motion" refers to Plaintiff Joan Goodman's Memorandum of Law in Support of Plaintiff's Motion to Appoint Lead Plaintiff and Approve Plaintiff's Selection of Lead Counsel filed on May 10, 2021 (ECF No. 21).

[5] As noted in the Lee/Bottoni Motion (defined *infra*), the fact that Robbins was the first to file derivative actions for stockholder-plaintiffs Lee and Bottoni on behalf of Fluor in this Court may be considered an "objective tie-breaker" weighing in favor of Robbins' appointment as Lead Counsel. *See Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003) (first-to-file factor may be considered as an "objective tie-breaker" where other factors "do[] not tilt heavily in either direction"). The "Lee/Bottoni Motion" refers to the Motion to Appoint Robbins LLP as Lead Counsel and the Balon B. Bradley Law Firm as Liaison Counsel (ECF No. 22), and the Memorandum of Law in Support of Motion to Appoint Robbins LLP as Lead Counsel and the Balon B. Bradley Law Firm as Liaison Counsel (ECF No. 23)

efforts to date include: (i) negotiating, drafting, and filing the original stipulation and proposed order seeking to consolidate the *Lee* and *Bottoni* Actions and to appoint a leadership structure; (ii) reaching out to counsel for Goodman to discuss stipulating to consolidation, the possibility of an agreement on a leadership structure that could avoid motion practice, and an agreed and orderly schedule for resolving any outstanding issues; (iii) preparing and circulating to plaintiff Goodman's counsel a draft stipulation addressing consolidation and leadership; (iv) reaching out to defense counsel and counsel for Goodman regarding the parties' respective positions as to whether the Derivative Action should be consolidated with the Securities Class Action,[6] as well as the possibility of a joint submission to the Court; (v) preparing the draft of the supplemental submission and circulating it to plaintiff Goodman's counsel for comment before filing; and (vi) communicating with counsel for certain plaintiffs in related derivative litigation pending elsewhere about potential areas for coordination in this multi-district derivative litigation moving forward.

Finally, while Scott+Scott is a fine law firm with capable attorneys, they have not demonstrated that they are more qualified than Robbins to serve as Lead Counsel here.  As addressed in detail in the Lee/Bottoni Motion, Robbins is unquestionably qualified to serve as Lead Counsel given the firm's extensive experience litigating stockholder derivative actions on behalf of public companies and its many outstanding recoveries for corporations and stockholders over nearly twenty years.  In addition, Bradley, a Dallas-based law firm with decades of litigation

---

[6] The "Securities Class Action" refers to *Chun v. Fluor Corp. et al.*, Case No. 3:18-CV-01338-X (N.D. Tex.).

and trial experience, as well as experience litigating stockholder derivative actions (including with Robbins), is well-qualified to serve as Liaison Counsel.[7]

For the reasons discussed herein and in the Lee/Bottoni Motion, plaintiffs Lee and Bottoni respectfully submit that (1) the *Goodman* Motion should be denied, (2) the motion filed by plaintiffs Lee and Bottoni should be granted,[8] and (3) Robbins and Balon should be appointed Lead Counsel and Liaison Counsel, respectively.[9]

## II.   ROBBINS, NOT SCOTT+SCOTT, SHOULD BE APPOINTED LEAD COUNSEL

### A.   The Quality of Plaintiffs' Respective Pleadings Does Not Support Appointing Goodman and Her Counsel to Leadership Positions Here

#### 1.   The Inclusion of 220 Materials in the *Goodman* Complaint Does Not Mean Goodman and Her Counsel Should Lead This Case

Goodman argues that she and her counsel should be appointed to leadership positions because her complaint is the "significantly stronger" pleading, as it draws on Section 220 materials. *Goodman* Motion at 2, 13.

However, courts have rejected the argument that plaintiffs who conducted an inspection demand pursuant to Section 220 are more adequate plaintiffs than those who did not.  *See, e.g.*, *Iron Workers Mid–South Pension Fund on Behalf of Caterpillar Inc. v. Oberhelman*, 2014 WL 5801508, at *3 (C.D. Ill. Nov. 7, 2014) ("[t]he fact that [plaintiff] did not perform a Section 220

---

[7] Plaintiff Goodman did not request that her Texas counsel, Kilgore & Kilgore PLLC ("Kilgore"), be appointed Liaison Counsel for plaintiffs in the consolidated Derivative Action.

[8] While the appointment of a formal "lead plaintiff" is not required in stockholder derivative litigation, in the event the Court is inclined to appoint a lead plaintiff, plaintiff Lee is more than qualified and stands ready and willing to take on that role.  *See* Declaration of Jay Lee in Support of Motion to Appoint Robbins LLP as Lead Counsel and the Balon B. Bradley Law Firm as Liaison Counsel filed May 10, 2021 (ECF No. 22-2) (the "Lee Decl.").  *See* section IV., *infra*.

[9] As discussed below, in the event the Court is inclined to appoint Scott+Scott to a leadership position here, Robbins should be appointed Co-Lead Counsel.  *See* section II.C., *infra*.

investigation before bringing suit does not necessarily mean that [plaintiff] is an inadequate derivative plaintiff, and, by extension, that its counsel is incompetent to serve as lead counsel for solely that reason"); *Berg*, 2014 WL 3749780, at \*7 (rejecting Scott+Scott's argument that "it has prosecuted the case most vigorously" because it completed a Section 220 investigation); *Pyott v. La. Mun. Police Emps.' Ret. Sys.*, 74 A.3d 612, 618 (Del. 2013) (rejecting the argument that plaintiffs who filed a related derivative action were inadequate representatives of the derivative claims because they did not pursue a pre-suit inspection demand, holding that "there is no record support for the trial court's premise that stockholders who file quickly, without bringing a § 220 books and records action,… are *a priori* acting on behalf of their law firms instead of the corporation," and absent such record "there was no basis on which to conclude that the [] plaintiffs were inadequate."). *Id.* (emphasis in original).

That is because Section 220 materials are not necessary to plead demand futility in every case. In fact, Robbins, counsel for plaintiffs Lee and Bottoni, has adequately alleged demand futility in numerous stockholder derivative actions without the benefit of books and records obtained through inspection demands. *See, e.g.*, Opinion, *Calma v. Templeton, et al.*, C.A. No. 9579-CB (Del. Ch. April 30, 2015); Opinion & Order, *Pacheco v. Guyer, et al.*, No. 1:18-cv-07999-VSB (S.D.N.Y. Sept. 19, 2019); Decision/Order, *Cement Masons Local 780 Pension Fund v. Schleifer*, Index No. 654453/2015 (N.Y. Sup. Ct.-N.Y. Cnty. June 29, 2017); Order After Hearings on September 23, 2016, *In re Apple Inc. Derivative Litig.*, Lead Case No. 1-14-CV-262174 (Cal. Super. Ct.-Santa Clara Cnty. Oct. 5, 2016); Report and Recommendation, *In re Gas Natural, Inc.*, Lead Case No. 1:13-cv-02805-LW (N.D. Ohio) ("*Gas Natural*") (Sept. 24, 2014); Order Adopting the Magistrate Judge's Report and Recommendations (June 4, 2015), *Gas Natural*, Lead Case No. 1:13-cv-02805-LW (N.D. Ohio); Order, *In re Koss Corp. S'holder Derivative Litig.*,

Lead Case No. 10-CV-2422 (Wisc. Cir. Ct.-Milwaukee Cnty. Nov. 29, 2010); Civil Minute Order, *Hess v. Heckmann, et al.*, Case No. INC-10010407 (Cal. Super. Ct.-Riverside Cnty. July 20, 2011); Findings and Order, *Paschetto v. Shaich, et al.*, Case No. 08-SL-CC00865 (Mo. Cir. Ct.-St. Louis Cnty. Dec. 14, 2009); Minute Order, *Lozides v. Schramm, et al.*, Case No. 37-2010-00097953-CU-BT-CTL (Cal. Super. Ct.-San Diego Cnty. Aug. 12, 2011); Memorandum Opinion and Order, *In re OM Grp., Inc. Derivative Litig.*, Lead Docket No. 1:03-CV-0020 (N.D. Ohio July 11, 2003); Order, *In re Tenet Healthcare Corp. Derivative Litig.*, Lead Case No. 01098907 (Cal. Super. Ct.-Santa Barbara Cnty. June 19, 2003); Order, *In re Ligand Pharms. Inc. Derivative Litig.*, Lead Case No. GIC-834255 (Cal. Super. Ct.-San Diego Cnty. June 20, 2005); *see also* Declaration of Shane P. Sanders in Opposition to Plaintiff Joan Goodman's Motion to Appoint Lead Plaintiff and Approve Plaintiff's Selection of Lead Counsel filed concurrently herewith ("Supp Sanders Decl."), ¶3.[10]

Moreover, Section 220 investigations—especially where, as here, all of the documents were voluntarily produced by the corporation, rather than being judicially compelled following an adversarial proceeding in the Delaware Chancery Court—only very rarely (if ever) yield "smoking guns." *See, e.g.*, *Cook v. Hewlett-Packard Co.*, No. 8667-VCG, 2014 Del. Ch. LEXIS 11, at *16 n.25 (Del. Ch. Jan. 30, 2014) (denying stockholder's request for additional books and records following trial in action brought pursuant to Section 220, even where plaintiff argued that

---

[10] Indeed, Delaware law is replete with examples of cases that survived motions to dismiss grounded on purported failure to plead demand futility without documents secured through Section 220 inspections. *See, e.g.*, *Pfeiffer v. Leedle*, 2013 WL 5988416, at *4-9 (Del. Ch. Nov. 8, 2013); *Pfeiffer v. Toll*, 989 A.2d 683, 689-90 (Del. Ch. 2010); *Ryan v. Gifford*, 918 A.2d 341, 354-56 (Del. Ch. 2007); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Stumpf*, 2012 WL 424557, at *6-7 (N.D. Cal. Feb. 9, 2012) (applying Delaware law and finding demand futile); *Shaev v. Baker*, 2017 WL 1735573, at *9-20 (N.D. Cal. May 4, 2017) (applying Delaware law and finding demand futile).

documents previously produced by corporation were "irrelevant filler material and/or are so heavily redacted and sanitized as to be useless").  As Goodman's counsel, Scott+Scott, is well aware from its own experiences, stockholder plaintiffs often are unsuccessful in establishing demand futility ***despite*** having obtained books and records through an inspection demand.  *See, e.g.*, Order Granting Defendants' Motion to Dismiss, *In re Duke Energy Corp. Coal Ash Derivative Litig.*, Consolidated C.A. No. 9682-VCG (Del. Ch. Dec. 14, 2016); Memorandum Opinion, *Horman, et al. v. Abney, et al.*, C.A. No. 12290-VCS (Del. Ch. Jan. 19, 2017) (Supp Sanders Decl., Exs. A-B).

Accordingly, the necessity and benefit of Section 220 materials in connection with pleading demand futility is not conducive to judicial determination in the context of a lead counsel motion. As one federal court noted, such analysis "would require the Court to put the cart before the horse, by determining whether any movant meets the substantive pleading standards of Rule 23.1 prior to appointing a lead plaintiff." *Chester Cnty.*, 2012 WL 1245724, at *1 n.2 (rejecting argument that one stockholder's demand futility allegations were "certain to be superior" due to that stockholder's materials obtained through a Section 220 demand).

Such analysis is particularly problematic here given that the references to the Section 220 materials in the *Goodman* Complaint are redacted, which makes it difficult—if not impossible—for plaintiffs Lee and Bottoni to assess the relative strength of the *Goodman* Complaint.  *See, e.g.*, *Berg*, 2014 WL 3749780, at *6 (holding that quality of pleadings factor was neutral where the parties were unable to assess complaint due to the complaint being "heavily redacted").  *Id.*[11]

---

[11] Goodman characterizes the Lee and Bottoni complaints as "notably weaker and vaguer than those of [Goodman]." *Goodman* Motion at 12. However, as discussed in detail in the Lee/Bottoni Motion, the Lee and Bottoni complaints allege particularized facts showing that Flour's fiduciaries made false and misleading statements that artificially inflated the price of Fluor stock and caused the Company to repurchase its own shares at those artificially inflated prices, and that those

Further, the 220 materials here are not solely the product or property of Goodman and her counsel—the same or substantially similar books and records have already been produced and/or promised to other stockholder plaintiffs in related derivative litigation pending in the Delaware Court of Chancery, Delaware federal court, and Texas state court. *See, e.g.*, Agreed Order Granting Joint Motion to Stay, *In re Fluor Corp. Derivative Litig.*, Cause No. DC-18-13236 (116th Dist. Ct., Dallas County, Tex. Apr. 1, 2019), ¶7 (order requiring Fluor to provide plaintiffs in that case with any documents produced to another Fluor stockholder pursuant to a books and records demand) (attached as Ex. C to the Supp Sanders Decl.); Agreed Order Granting Joint Motion to Stay, *Schifano v. Barker, et al*., Cause No. DC-20-06727 (44th Dist. Ct., Dallas County, Tex. Aug. 21, 2020), ¶9 (same) (attached as Ex. D to the Supp Sanders Decl.); Agreed Order Granting Joint Motion to Stay, *Smith v. Hernandez, et al.*, Cause No. DC-20-10706 (116th Dist. Ct., Dallas County, Tex. Oct. 21, 2020), ¶9 (same) (attached as Ex. E to the Supp Sanders Decl.); Stipulation and Order to Stay Derivative Action, *In re Fluor Corp. Stockholder Derivative Litig.*, Consol. C.A. No. 1:20-cv-00499-MN (D. Del. Aug. 13, 2020), ¶6 (Fluor required to provide plaintiffs in that case with any discovery produced to any plaintiffs in related derivative actions) (attached as Ex. F to the Supp Sanders Decl.); Public Version, Verified Amended Stockholder Derivative Complaint, *Atchison, et al. v. Hernandez, et al.*, Case No. 2020-0655-JTL (Del. Ch. Nov. 6, 2020) (derivative complaint incorporating documents obtained pursuant to Section 220 inspection demand separate and apart from any efforts by plaintiff Goodman) (attached as Ex. G to the Supp Sanders Decl.).

Counsel for plaintiffs Lee and Bottoni will likewise have access to these books and records if they are appointed Lead Counsel, and a consolidated complaint that includes all of the allegations

---

fiduciaries breached their fiduciary duties in connection therewith.  *See* Lee/Bottoni Motion at 18-22.  In the interest of brevity and to avoid repetition, plaintiffs Lee and Bottoni respectfully refer the Court to that detailed discussion in the Lee/Bottoni Motion.  *Id.*

(including anything helpful from the Section 220 materials) will eventually be filed in this case. *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 273 (S.D.N.Y. June 30, 2009) ("[T]he different movants' criticism of each other's claims and pleadings is unconvincing.  All of the derivative complaints include roughly the same allegations; each also contains unique factual allegations, legal theories, and claims.  I need not determine which complaints are superior to the others.  Many, if not all, deficiencies in the different complaints may be cured when the Institutional Group files a consolidated derivative complaint, and differences among the complaint can also be addressed at that time."); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 2017 WL 130282, at *3 (N.D. Cal. Jan. 12, 2017) (comparison of the pleadings was not dispositive because "'any unique information included, or cause of action asserted, in any one complaint can easily be incorporated into a consolidated amended complaint, regardless of who is appointed lead counsel.'").

The inclusion of Section 220 materials alone does not justify appointing Goodman and her counsel to leadership positions here.

### 2.    Goodman Fails to Adequately Plead her Federal Claims and, Thus, Fails to Allege a Basis for Federal Jurisdiction

Goodman's failure to adequately plead her federal derivative claims further weighs against appointing Goodman and her counsel to leadership positions.

To state a claim under Section 10(b) and Rule 10b–5, a plaintiff must allege "'(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'"  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).

Despite the requirement that a Section 10(b) and Rule 10b-5 claim must arise in connection with the purchase or sale of a security, the *Goodman* Complaint fails to allege that Fluor bought or sold any Company shares at all, let alone that such sales were made in connection with its officers' and directors' false and misleading statements.  As a ***derivative*** claim filed on behalf of Fluor, a Section 10(b) and Rule 10b-5 claim must allege that ***Fluor*** was defrauded by its directors and officers in connection with the purchase or sale of the Company's securities.  The *Goodman* Complaint, however, merely alleges in conclusory fashion that "the Company is suffering litigation expense and reputational harm in the marketplace as a result of the violations of §10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder."  *Goodman* Complaint, ¶402.  The *Goodman* Complaint does not allege that Fluor purchased Company stock at prices that were artificially inflated as a result of the defendants' misstatements.  *See, e.g.*, *In re Fossil, Inc.*, 713 F. Supp. 2d 644, 652-54 (N.D. Tex. 2010) (upholding derivative Section 10(b) claim because plaintiffs alleged that "'Fossil would not have purchased its common stock at the prices it paid had the market previously been aware that the market price of Fossil's stock was falsely inflated by defendants' misleading statements'").  Goodman, therefore, fails to adequately allege that Fluor suffered any Rule 10b-5 losses stemming from the individual defendants' misstatements, let alone that the individual defendants deceptively caused the Company to incur a loss due to any repurchase of its stock.  *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009) (concluding that a plaintiff must allege "a facially 'plausible' causal relationship between the fraudulent statements or omissions and plaintiff's economic loss").  In contrast, plaintiffs Lee and Bottoni adequately plead claims for violation of Section 10(b) and Rule 10b-5, alleging that the individual defendants "caused the Company to repurchase shares of its own common stock at

prices that were artificially inflated due to their false or misleading statements." *See Lee* Complaint, ¶307; *see also* ¶¶268-71; *Fossil, Inc.*, 713 F. Supp. 2d at 653-54.[12]

Because Goodman has failed to adequately plead the essential elements needed to state a claim for violations of Section 10(b) and Rule 10b-5, her claim against the individual defendants for violations of Section 29(b) of the Exchange Act—which is based on violations of Section 10(b)—likewise fails.

Having failed to adequately plead her Section 10(b), Rule 10b-5, and Section 29(b) claim, Goodman has no basis for federal question jurisdiction. And Goodman did not allege federal jurisdiction based on diversity of citizenship.[13] The Court, therefore, lacks subject matter jurisdiction over Goodman's claims brought under federal law and may decline to retain supplemental jurisdiction over the state law claims once Goodman's federal claims are dismissed. *See* 28 U.S.C § 1367(c)(3) (court "may decline to exercise supplemental jurisdiction over a claim under subsection [1367](a) if ... the district court has dismissed all claims over which it has original jurisdiction"); *Biotechnology Value Fund, L.P. v. Celera Corp.*, 12 F. Supp. 3d 1194, 1207 (N.D. Cal. 2013) (after dismissal of federal claims under Exchange Act, court declined to exercise

---

[12] Further, while plaintiff Goodman relies on statements from confidential witnesses in the Securities Class Action, there is nothing in the record to suggest that Goodman or her counsel conducted the requisite inquiry to confirm that the factual contentions asserted in the Securities Class Action on which Goodman relied have evidentiary support. *See Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *20 (C.D. Cal. May 5, 2011) (investigation could include "contacting the attorneys whose allegations [were] copied to discuss the basis for the claims"); *Johns v. Bayer Corp.*, 2010 WL 2573493, at *1-2 (S.D. Cal. June 24, 2010) (allowing the "lifting" of allegations from other complaints where plaintiffs' counsel contacted the attorneys in the other cases to discuss their basis); *cf. In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008) (striking allegations copied from SEC complaint as violating non-delegable duty to personally investigate basis for allegations). This further undermines Goodman's argument that the quality of her complaint supports appointing her and her counsel to leadership positions.

[13] Plaintiff Bottoni alleges federal jurisdiction based on diversity of citizenship. *See Bottoni* Complaint, ¶¶19, 22-46.

supplemental jurisdiction over remaining state law claims); *see also generally Briley v. Barreca*, 2021 WL 269767, at *4 (E.D. La. Jan. 27, 2021) ("The Fifth Circuit has stated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'").

These pleading deficiencies weigh against the appointment of Goodman and her counsel to leadership roles in the consolidated Derivative Action.

### B.  Plaintiffs Lee and Bottoni and their Counsel Have Shown They Will More Vigorously Pursue This Action

Plaintiff Goodman also contends that she and her counsel should be appointed to leadership positions because they purportedly have pursued this case vigorously and effectively.  *Goodman* Motion at 13-14.  But it is counsel for plaintiffs Lee and Bottoni who have worked most effectively and efficiently to date, including in connection with their efforts to coordinate and organize the related derivative actions.

In addition to filing the first two derivative complaints, Robbins' efforts to date include: (i) negotiating, drafting, and filing the original stipulation and proposed order seeking to consolidate the *Lee* and *Bottoni* Actions and to appoint Robbins as lead counsel and Balon as liaison counsel; (ii) reaching out to counsel for Goodman to discuss stipulating to or jointly moving for consolidation of the *Lee*, *Bottoni*, and *Goodman* Actions, the possibility of an agreement on a leadership structure that could avoid motion practice, and, if necessary, an agreed and orderly schedule for resolving any outstanding issues; (iii) preparing and circulating to plaintiff Goodman's counsel a draft stipulation consolidating the three related actions and setting a proposed schedule (subject to Court approval) for resolving any disputes concerning the most appropriate leadership

structure for plaintiffs in the three related actions; (iv) reaching out to the defendants to confer regarding the parties' respective positions as to whether the Derivative Action should be consolidated with the Securities Class Action, as well as the possibility of a joint submission on behalf of all parties; (v) reaching out to counsel for plaintiff Goodman to inform them of the discussions with defendants' counsel, to determine Goodman's position regarding consolidation of the derivative actions with the Securities Class Action, and to discuss the possibility of a joint submission (either with defendants or just on behalf of the three plaintiffs); (vi) preparing the draft of the supplemental submission (incorporating a short insert from plaintiff Goodman's counsel) and circulating it to plaintiff Goodman's counsel for comment before filing; and (vii) communicating with counsel for certain of the plaintiffs in related derivative litigation pending elsewhere about potential areas for coordination in this multi-district derivative litigation moving forward.  These efforts support the appointment of Robbins as Lead Counsel.  *See Berg*, 2014 WL 3749780, at *7 ("Courts have also found in favor of the party that 'made the most concerted effort to be inclusive,' and looked to streamline the consolidation process."); *Kubiak v. Barbas*, 2011 U.S. Dist. LEXIS 65903, at *9 (S.D. Ohio June 14, 2011) (finding counsel's "concerted effort to be inclusive" to be persuasive when appointing lead counsel).

In contrast, in addition to filing her complaint more than eight months after the Lee and Bottoni complaints were filed, Goodman, through her counsel, unilaterally attempted to set a schedule for briefing consolidation and leadership issues without consulting counsel for Lee and Bottoni; repeatedly declined invitations to work together as co-lead counsel with counsel for Lee and Bottoni to serve the best interests of Fluor and to avoid contested motion practice over a leadership structure for plaintiffs; and largely has been a passive participant in the efforts to organize the related cases.  *See* Lee/Bottoni Motion at 22-23; Declaration of Shane P. Sanders in

- 14 -

Support of Motion to Appoint Robbins LLP as Lead Counsel and the Balon B. Bradley Law Firm as Liaison Counsel filed May 10, 2021 (ECF No. 22-1), ¶¶5-8.  Moreover, any claims by Goodman concerning her purportedly vigorous prosecution of the claims or suggestions that Lee and Bottoni should have pursued the claims more vigorously ring hollow given that Goodman's counsel has made clear that, if appointed lead counsel, they intend to seek to stay the Derivative Action behind the Securities Class Action.  Supp Sanders Decl., ¶2.

The vigor displayed by Robbins to date supports their appointment as Lead Counsel.

**C.    Scott+Scott Has Not Demonstrated that It Is More Qualified than Robbins to Serve as Lead Counsel**

Plaintiffs Lee and Bottoni do not dispute that Goodman's counsel, Scott+Scott, has experience in stockholder derivative litigation, or that the Scott+Scott attorneys assigned to this case are capable lawyers.   However, the *Goodman* Motion offers nothing to suggest that Scott+Scott is more qualified than Robbins to serve as Lead Counsel in this consolidated Derivative Action.   *Compare Goodman* Motion at 15-16, *with* Lee/Bottoni Motion at 13-17. Interestingly, in Scott+Scott's primary highlighted achievement—a recent settlement of stockholder derivative litigation brought on behalf of Alphabet Inc.—Robbins actually represented the California federal plaintiffs in the underlying litigation and the settlement negotiations (Scott+Scott represented a different plaintiff in related derivative litigation in the Delaware Court of Chancery).   *See* Supp Sanders Decl., Ex. H, Stipulation and Agreement of Settlement, *In re Alphabet Inc. S'holder Derivative Litig.* (Cal. Super. Ct.-Santa Clara Cnty. Aug. 2020).

Plaintiffs Lee and Bottoni submit that, while Robbins should be appointed sole Lead Counsel (for reasons set forth in the Lee/Bottoni Motion at 13-17), in the event this Court is inclined to appoint Scott+Scott to a leadership position, Robbins should be appointed Co-Lead Counsel.   *See Bank of America*, 258 F.R.D. at 273 ("[A]ppointment of multiple counsel is routine

and widely accepted.").  Robbins has worked with Scott+Scott cooperatively and effectively in the past and, in fact, is currently serving as co-lead counsel with Scott+Scott in numerous pending stockholder derivative actions.  *See, e.g.*, *Boninsegni v. Clark, et al.*, C.A. No. 2019-0224-JTL (Del. Ch.); *In re Altria Group, Inc. Derivative Litig.*, Lead Case No. 3:20-cv-00772-DJN (E.D. Va.); *In re Duke Energy Cop. Coal Ash Derivative Litig.*, Consolidated C.A. No. 9682-VCG (Del. Ch.); *Alphabet S'holder Derivative Case*, Case No. 16CV300731 (Cal. Super. Ct.-Santa Clara Cnty.); *Carpenters Pension Fund of Illinois, et al. v. Neidorff, et al.*, Case No. 4:18-cv-00113-CDP (E.D. Mo.).  If appointed Co-Lead Counsel, Robbins and Scott+Scott certainly would be able to work together effectively in the best interests of Fluor and its stockholders.

## III.  THE BALON B. BRADLEY LAW FIRM SHOULD BE APPOINTED LIAISON COUNSEL

Although plaintiff Goodman has not sought to have her local Texas counsel (Kilgore) appointed as part of any leadership structure in this case, plaintiffs Lee and Bottoni respectfully submit that Dallas-based Liaison Counsel is appropriate here, and that Bradley should be appointed to that role.  Mr. Bradley has practiced law in Texas since the 1970s and, since 2006, has been concentrating a considerable portion of his practice on serving as local Texas counsel in stockholder derivative actions.  Mr. Bradley has also worked effectively and successfully with Robbins in prior stockholder derivative cases in this State and will do so here as well.  *See, e.g.*, *Brantly v. Solomon, et al.*, Cause No. 05-03117 L (193rd Dist. Ct., Dallas County, Tex.); *Kabota v. Walker, et al.*, Cause No. 04-12854 (116th Dist. Ct., Dallas County, Tex.); *Nystrom v. Caster, et al.*, Case No. 3-06-cv-0093G (N.D. Tex.).

## IV.  IN THE EVENT A LEAD PLAINTIFF IS APPOINTED, PLAINTIFF LEE—NOT GOODMAN—SHOULD BE APPOINTED TO SERVE IN THAT ROLE

As noted in the Lee/Bottoni Motion, the appointment of a "lead plaintiff" (as opposed to just "lead counsel") in stockholder derivative litigation is within the Court's discretion, but is not

required.  *See In re Comverse Tech., Inc., Derivative Litig.*, 2006 WL 3761986, at *1 (E.D.N.Y. Sept. 22, 2006) ("While … Rule [23.1] may contemplate the appointment of a lead plaintiff, the Court is not aware of any precedent requiring as such.  Indeed, many courts in this district and others have consolidated derivative actions, appointed lead counsel, but have not appointed a lead plaintiff."); *Chester Cnty.*, 2012 WL 1245724, at *1 ("In declining to appoint lead plaintiff, courts have reasoned that a derivative action is filed on behalf of a company so 'it is unclear what benefits there are to appointing a lead plaintiff, especially when lead counsel is appointed.'"); *Moradi v. Adelson*, 2011 WL 5025155, at *2 (D. Nev. Oct. 20, 2011) (expressly declining to appoint a lead plaintiff); *MacAlister v. Guterma*, 263 F.2d 65, 68 (2d Cir. 1958) (no mention of benefit of appointing lead plaintiff); *Gallardo v. Bennett*, 2006 WL 2884497, at *1 (N.D. Cal. Oct. 10, 2006) (refusing to appoint lead plaintiff, noting the absence of precedent suggesting that appointment of a lead plaintiff is necessary).  Derivative actions must comply with Rule 23.1(a) of the Federal Rules of Civil Procedure, which requires only that a plaintiff in a derivative action "fairly and adequately represent the interests of the shareholders or members who are similarly situated in enforcing the right of the corporation or association."

Here, plaintiff Goodman has moved for appointment as a "lead plaintiff," but has not presented any unique circumstances that would necessitate a formal lead plaintiff appointment here. *Goodman* Motion at 9-15.  Plaintiff Goodman also has failed to demonstrate that she should be appointed to serve in that role over plaintiff Lee, in any event.  In fact, plaintiff Goodman did not even submit a declaration in support of her motion to be appointed lead plaintiff.  On the contrary, plaintiff Lee submitted a declaration attesting to (among other things) the fact that he understands the nature of this Derivative Action, he has worked and will continue to work closely with his counsel in the best interests of Fluor and its stockholders, he understands the continuous

ownership requirement for derivative standing and will ensure he maintains derivative standing throughout the duration of the litigation, and he stands ready, willing, and able to serve as lead plaintiff (in the event the Court determines to appoint one).  Lee Decl., ¶¶4-9.[14]

While there are no special circumstances requiring the appointment of a formal lead plaintiff here, should the Court be inclined to appoint a lead plaintiff (in addition to lead counsel), plaintiff Lee respectfully requests that he be appointed Lead Plaintiff.

## V.     CONCLUSION

For the foregoing reasons (and the reasons discussed in the Lee/Bottoni Motion), plaintiffs Lee and Bottoni respectfully request that the Court (1) deny the *Goodman* Motion; (2) grant the Lee/Bottoni Motion; and (3) appoint Robbins as Lead Counsel and Bradley as Liaison Counsel for plaintiffs in the consolidated Derivative Action.

Dated: May 24, 2021                              Respectfully submitted,

*s/ Shane P. Sanders*
SHANE P. SANDERS

ROBBINS LLP
BRIAN J. ROBBINS
CRAIG W. SMITH
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com
          csmith@robbinsllp.com

---

[14] Plaintiff Lee is a verified certified public accountant licensed in California with ten years of public accounting experience, and his educational background and professional training has helped him familiarize with principles of general law and taxation, including the financial accounting standards set forth in generally accepted accounting principles and the corporate financial information detailed in financial statements that are publicly filed with the U.S. Securities and Exchange Commission.  *Id.*, ¶2.  Plaintiff Lee has also attested to the fact that he first purchased Fluor stock in November 2009, has held Fluor stock continuously since that time, is interested in the Company's long term success, and intends to continue to hold Fluor shares until the resolution of this action—ensuring that he will maintain standing to pursue the derivative claims throughout the duration of the litigation.  *Id.*, ¶3.

ssanders@robbinsllp.com

*Proposed Lead Counsel for Plaintiffs and
Attorneys for Plaintiffs Alyson Bottoni and Jay
Lee*

BALON B. BRADLEY LAW FIRM
BALON B. BRADLEY
State Bar No. 02821700
11910 Greenville Avenue, Suite 220
Dallas, TX 75234
Telephone: (972) 992-1582
Facsimile: (972) 755-0424
E-mail: balon@bbradleylaw.com

*Proposed Liaison Counsel for Plaintiffs and
Attorneys for Plaintiffs Alyson Bottoni and Jay
Lee*

STEPHENS & STEPHENS LLP
CONRAD B. STEPHENS
505 South McClelland Street
Santa Maria, CA 93454
Telephone: (805) 922-1951
Facsimile: (805) 922-8013
E-mail: conrad@stephensfirm.com

*Additional Counsel for Plaintiff Jay Lee*

1526883

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of May, 2021, the foregoing document was filed using the Court's CM/ECF system.  In addition, (1) the filing is available for viewing and downloading via the CM/ECF system, and (2) the CM/ECF system will send notification of this filing to all attorneys of record who have registered for CM/ECF updates.

Dated: May 24, 2021

*s/ Shane P. Sanders*
SHANE P. SANDERS